**STATE of Missouri, Plaintiff–Respondent,**

v.

**William T. STEWART, Defendant–Appellant.**

**No. 26875.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 24, 2006.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Lisa M. Kennedy, Office of Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury found William Stewart ("Defendant") guilty of driving while intoxicated (§ 577.010) ("DWI," class D felony) and

driving while his license was revoked (§ 302.321) ("DWR," class A misdemeanor).[1] The trial court sentenced Defendant to seven years' imprisonment for the DWI count, running concurrently to a one-year sentence for the DWR count.[2] Defendant alleges the trial court committed plain error when it failed to *sua sponte* instruct the jury on the defense of justification under section 563.026. We find no error, plain or otherwise. We affirm.

On the evening of June 4, 2004, Defendant and his friend, Butch, moved some furniture from Defendant's home to another friend's house. Butch drove because Defendant's license was revoked. After unloading the furniture, Defendant and Butch began drinking.

Defendant testified that, from 7:30 to 11:30 P.M., he had one drink, a shot of Jim Beam mixed with a can of Coca–Cola. At 11:30 P.M., Defendant mixed another drink, and he and Butch decided to leave. Defendant testified that Butch had "a lot" to drink and that he (Butch) was drunk when the two left. Again, Butch was the driver as they left.

The following was Defendant's at-trial explanation of why he started driving during the return trip.

"Q. [to Defendant] Trooper Glendenning testified that you were driving at some point?

"A. At Joel E. Barbour [a school], coming across Normandy Road. Butch was intoxicated.

"Q. Butch was intoxicated?

"A. Yes, he was driving, got to running off the road ... and there at Joel E. Barbour, I shut the engine off and—

    . . . .

"Q. Why would you do that?

"A. He was drunk, I mean bad.

"Q Were you nervous?

"A. Well, getting scared. I was faced with the dilemma of either driving myself or leaving him there with the chance of him *getting out in the road* and driving around and get run over or whatever. I didn't want to drive. I didn't have a driver's license. I was faced with that dilemma, so I drove ...

"Q. Let me stop you. You turned the key off, you said, 'Get over, I'm driving'?

"A. I had to scoot him over.

"Q. You scooted him over and said, 'I'm driving'?

"A. Yes.

"Q. Did you sit there at all, try to call somebody? Did you do anything like that?

"A. No phone." (Emphasis added.)

Shortly after Defendant started driving, he met a highway patrolman, Trooper Glendenning. After clocking the truck going thirty-eight miles per hour in a fifty-five mile per hour zone, Glendenning turned around and followed Defendant. Suffice it to say, as Glendenning followed Defendant, he saw several things that gave him probable cause to stop the truck. As Glendenning approached the truck, Defendant exited, holding a beer can. Thereon, Defendant "looked straight at [Glendenning]," uttered an oath, and "threw the beer can back into the inside of the truck." Subsequent events, including failed field sobriety tests, led Glendenning to arrest Defendant for driving while intoxicated. Later, at the police station, Defendant failed a breathalyzer test.

---

1. All statutory references are to RSMo (2000), unless indicated otherwise.

2. Defendant was a persistent offender in that he had at least six prior DWI convictions and eight prior DWR convictions.

At the jury trial, Defendant was the only witness for the defense. He testified he was not drunk, Glendenning lied about what happened, and the breathalyzer results were wrong because Glendenning failed to follow the proper procedures. The jury disbelieved Defendant's testimony and convicted him of DWI and DWR. This appeal followed.

■ In his only point on appeal, Defendant alleges the trial court committed plain error when it failed to *sua sponte* instruct the jury on the defense of justification. Defendant's "justification" argument focuses on his testimony that he was afraid to leave Butch alone in the truck because he might drive off or wander into the road after Defendant left. Defendant then argues that his only alternative was to drive the truck home.

The application of the defense of justification by necessity under section 563.026 is extremely limited. *See* § 563.026, Committee Comments (1973); *State v. Wyatt*, 800 S.W.2d 480, 481 (Mo.App.1990). Under the statute, a person is legally justified in committing a crime (other than a class A felony or murder) when it is necessary as an *emergency measure* to avoid an *imminent injury* that is about to occur because of *a situation occasioned or developed through no fault of the actor.* § 563.026.1.

■ The defense is limited to the following circumstances:

"(1) [T]he defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue." *State v. Burkemper*, 882 S.W.2d 193, 199[17] (Mo.App.1994).

■ The justification issue is not to be submitted to the jury unless supported by substantial evidence and is one upon which the defendant has the burden of persuasion. *State v. Smith*, 884 S.W.2d 104, 105[2] (Mo.App.1994). "Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification." § 563.026.2.

Defendant's argument that he was entitled to a justification instruction fails for a number of reasons. First, the alleged imminent injury (Butch driving off or wandering from the truck) was a situation that developed through Defendant's own fault, at least in part. When the two left at 11:30 P.M., Defendant knew Butch was drunk. Defendant voluntarily got into a vehicle with a person he knew was intoxicated. Defendant had other alternatives: (1) he could have refused to leave; (2) he could have tried to talk Butch into staying; or (3) he could have asked other people to drive the two home. By failing to do so, he was partially responsible for creating the situation that allegedly called for emergency action. As such, the plain language of the statute precludes Defendant from being entitled to a justification defense instruction. § 563.026.1.

Second, the evidence presented to the trial court was not enough, as a matter of law, to show a justification defense existed. Defendant relies on certain facts that allegedly show he had no other alternative but to drive the truck. Specifically, he points to his testimony that he and Butch were on a rural county road with no phone; that Butch was running off the road and

was clearly drunk, so Defendant turned off the engine to keep Butch from driving. At this point, Defendant asserts he considered leaving Butch, but was afraid that he would wake up and drive off or wander into the road. From this, Defendant claims his *only* alternative was to drive the truck to prevent any harm to Butch. The record simply does not support that argument.

From Defendant's description of what happened, the only reasonable inference to be drawn was that Butch had stopped the truck and it was not on the traveled part of the highway when Defendant "shut the engine off," scooted Butch over, and started driving. This follows because of Defendant's testimony that the "dilemma" (as he saw it) was "the chance of [Butch] *getting out in the road.*" Such testimony bespeaks that Butch had stopped the truck somewhere other than on the roadway.

As such, there were other legal alternatives open to Defendant. First, Defendant could have temporarily kept Butch from driving, either by taking the keys or otherwise disabling the truck. Second, once that was accomplished, the two could have slept in the truck until morning when Butch was sober and could drive. This happened June 4, 2004; consequently, severely cold weather would not have precluded that option. In that fashion, Defendant could have solved his "dilemma" without driving and without exposing anyone to harm. After disabling the truck, a third available option was for Defendant to wait beside the road and seek help from anyone who might drive by. These illustrations are not exclusive, but they do demonstrate Defendant had other legal alternatives; consequently, we find he was not entitled to a justification defense instruction. *Smith,* 884 S.W.2d at 105[17].

Finally, we note the evidence that an injury to Butch was imminent was speculative at best. Defendant testified that he thought there was a "chance" that Butch would awake from his drunken stupor and drive off or wander into the road. From this, Defendant argues that an injury would certainly occur. This type of speculation is not sufficient evidence, as a matter of law, entitling Defendant to a justification defense instruction. Simply stated, it is equally likely that Butch would remain passed out until morning, or would awake and pass out again, or would awake, drive off, and not be injured.[3] The speculative nature of the testimony and debatability of the issue precludes application of the statute. *Burkemper,* 882 S.W.2d at 199.

For all of the foregoing reasons, we find that the trial court did not err when it did not *sua sponte* instruct the jury on the issue of justification. Point denied.

The judgment is affirmed.

BARNEY, J., and BATES, C.J., concur.

3. Obviously, this court is not advocating drunken driving.