Mark D. Pfeiffer, Presiding Judge
Ms. Ashley Zuidema appeals from her judgment of conviction, following a trial by jury, by the Circuit Court of Nodaway County, Missouri ("trial court"), for one count of second-degree burglary. In her sole point on appeal, Zuidema argues the trial court erred in refusing to instruct the jury on the defense of justification by necessity. We affirm.
Factual Background[1]
On or about January 12, 2016, though not possessing a valid driver's license, Ms. Ashley Zuidema ("Zuidema") gave her friend a ride home to Stanberry, Missouri. She was going to spend the night at the friend's home, but the friend and her husband got in an argument, and Zuidema decided to leave and drive to her home in Savannah, Missouri. She had difficulty starting her car, but it eventually started. When she stopped for gas, the car again had trouble starting. Though she had spoken on her mobile phone to her mother about her car troubles, she decided not to request help from her mother and, instead, *188 began the drive home. And, instead of taking heavily traveled roads on her route home, she decided to take the less-traveled "scenic route," as Zuidema did not want to risk being pulled over in light of the status of her driver's license. On the rural route, she lost her cellular phone signal and the car began "spitting, stuttering, wouldn't stay started[,]" so she pulled into the driveway of a house where she saw a light on, because it was "freezing cold outside."
Zuidema knocked on the door of the house, but nobody was home. Zuidema entered the house. She picked up the home phone and attempted to call the first number on the home phone, which said "Jennifer," and did not get an answer. Her cell phone got partial reception momentarily and she called her fiancé and communicated to him that her car was broken down, that she was safe at a house, but did not know where she was. She did not ask her fiancé to attempt to find her to pick her up.
Zuidema plugged her mobile phone into the homeowners' cell phone charger and found some pajama bottoms in the house, so she put those on, "put [her] pants in the wash and decided to get cleaned up." She testified, "I was cold. So I made some warm tea, and was getting ready to get cleaned up." In that regard, Zuidema began drawing warm water in the bathtub.
The home Zuidema had entered belonged to Martin and Jennifer Johnson. The Johnsons were away on vacation at the time and had their nephews taking care of their pets and chores for them while away. Their nephew, Connor Johnson, went to the house about 6:45 a.m., and saw a car he did not recognize in the driveway. As he backed out of the driveway, he saw "a head pop out of the door." Connor drove away from the house, up a hill, and called his mother and father, Maurissa and Darren Johnson, who lived about two miles from Martin and Jennifer Johnson's home. Maurissa dialed 911 and Darren and Maurissa arrived at Martin and Jennifer's driveway in about three minutes, where they encountered Zuidema. The police arrived shortly thereafter and took Zuidema into custody. The police also accompanied Maurissa Johnson in walking through the house, where Maurissa observed that:
she had some jeans and stuff laying on the floor in the kitchen, between the kitchen and bathroom. The couch in the living room was pulled out on one side away from the wall. She had a tea cup, a cup of tea, in the bathroom on the counter. There was a cup of tea on the main bar counter in the kitchen. There was-the computer desk was a rolltop desk. It was up. The computer was on. The chair was pulled out. In the bathroom she had her cell phone plugged in to the plug-in and sitting on the bathroom counter. Bathwater was drawn in the bathtub.... I found out later ... that a bag was missing.... [A]nd then when Jennifer and [Martin] returned Jennifer found clothing in the washing machine and then found a winter coat hung up in the laundry room.
Zuidema was charged with one count of second-degree burglary in violation of section 569.170 for knowingly entering an inhabitable structure for the purpose of committing stealing (Count 1), an alternative count of second-degree burglary in violation of section 569.170 for knowingly remaining unlawfully in an inhabitable structure for the purpose of committing stealing (Count 2), and one count of stealing in violation of section 570.030 for appropriating clothes, tea, electricity, water, and a canvas tote bag owned by the Johnson family without their consent and with the *189 purpose to deprive them of the property (Count 3).[2]
At the jury instruction conference following the close of all the evidence at trial, defense counsel submitted instructions related to the defense of justification by emergency or necessity under section 563.026. After argument on the proffered instructions and verdict directors, the trial court refused to give Zuidema's instructions and overruled defense counsel's objections to the verdict directors that did not include the defense of justification.
Three counts were submitted to the jury, both burglary counts with the lesser included offense of first-degree trespassing as an alternative. Zuidema was acquitted of Count 1 and Count 3. Zuidema was found guilty of Count 2, second-degree burglary for knowingly remaining unlawfully in an inhabitable structure for the purpose of committing stealing. The trial court sentenced Zuidema to three years of imprisonment, suspended the execution of her sentence, and placed her on probation for five years.
Following the verdict, Zuidema filed a motion for judgment of acquittal or for new trial, arguing that the trial court erred in refusing to give the instruction on the defense of justification by emergency or necessity. The trial court denied the motion. Zuidema timely appeals.
Analysis
In her sole point on appeal, Zuidema argues that the trial court erred in refusing her proffered justification by necessity instruction because she claims there was sufficient evidence to support the instruction. She contends that, considering her testimony as true, she was facing the risk of imminent injury due to hypothermia, that the harm caused by her entry and "ma[king] a cup of tea, us[ing] a washing machine, put[ting] on pajamas that she found, plugg[ing] her cell phone into a charger and dr[awing] up a bath" was not disproportionate to the harm avoided, and the "emergency situation" she faced was not her fault.
Reversal for instructional error is only warranted where it misled the jury and was so prejudicial that it deprived the defendant of a fair trial. State v. Nash , 339 S.W.3d 500, 511-12 (Mo. banc 2011) (citing State v. Avery , 275 S.W.3d 231, 233 (Mo. banc 2009) ; State v. Anderson , 306 S.W.3d 529, 534 (Mo. banc 2010) ).
Section 563.026 reads:
1. Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any offense other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.
2. The necessity and justifiability of conduct under subsection 1 may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or *190 with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.
3. The defense of justification under this section is an affirmative defense.
It is well established that the necessity defense in section 563.026 is limited to circumstances in which:
"(1) [T]he defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."
State v. Cox , 248 S.W.3d 1, 7 (Mo. App. W.D. 2008) (quoting State v. Stewart , 186 S.W.3d 832, 834 (Mo. App. S.D. 2006) ).
Here, the claimed facts and circumstances on the record were not legally sufficient to support an instruction on the defense of justification by necessity. The record reveals that Zuidema was not without one or more legal alternatives to her conduct that would have been effective in abating the danger she faced and that the imminent injury she sought to avoid by her action was not "about to occur by reason of a situation occasioned or developed through no fault of the actor," both of which are required to support a defense of justification by necessity. Id. ; § 563.026.
Here, Zuidema knew her car was having trouble from the time she chose to leave her friend's house in Stanberry, Missouri. At that time, she had cell phone reception and even spoke to her mother, but chose not to request a ride or assistance from her or anyone else. She chose to drive without a license, and that influenced her decision to use rural "scenic" roads, rather than main roads where there would be more gas stations, businesses, and other travelers, and presumably, even cell phone service, in the event her car, which she knew to be malfunctioning, broke down and she needed assistance.
Once Zuidema was inside at the Johnsons' residence, she chose to dial the first phone number listed on the landline, rather than a tow truck, her mother, her fiancé, or any other acquaintance or service to assist her in getting home safely or at least leaving the premises she had chosen to enter without permission. Zuidema further chose to put on the homeowners' pajama pants, "get cleaned up[,]" make some tea, and use the homeowners' cell phone charger, rather than to not touch anything she did not have permission to use.
The record reveals that Zuidema's "emergency situation" did not develop through no fault of her own, as required to give her proffered justification instruction; rather, it was occasioned by her poor choices. Likewise, Zuidema had one or more legal alternatives at various points in time during her conduct that would have been effective in abating any danger she was facing, also precluding her from benefiting from an instruction on justification by necessity.
Because the claimed facts and circumstances on the record were not legally sufficient to support an instruction on the defense of justification by necessity, the trial court did not err in refusing to instruct the jury on that defense.
Zuidema's point on appeal is denied.
*191 Conclusion
The judgment of the trial court is affirmed.
Karen King Mitchell, Chief Judge, and Anthony Rex Gabbert, Judge, concur.

"This Court reviews the evidence presented at a criminal trial in the light most favorable to the verdict." State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009). However, when reviewing a claim that the trial court erred in refusing to instruct the jury on the defense of justification by necessity, this Court considers the defendant's testimony about the claimed facts and circumstances to be true and considers whether they are legally sufficient to support the instruction. State v. Karr , 968 S.W.2d 712, 716 (Mo. App. W.D. 1998) (citing State v. Owen , 748 S.W.2d 893, 895 (Mo. App. W.D. 1988) ).

All statutory references are to the Revised Statutes of Missouri 2000, as supplemented through 2015.