

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                    )
                                      )
    Plaintiff-Respondent,         )
                                      )
v.                                    )    No. SD37395
                                      )
JASON MICHAEL HURST,                  )    **Filed:  August 30, 2022**
                                      )
    Defendant-Appellant.          )

APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY

Honorable Kevin Lee Selby

**<u>REVERSED AND REMANDED FOR A NEW TRIAL</u>**

Jason Michael Hurst ("Defendant") appeals his convictions for first-degree tampering and resisting arrest,[1] claiming the circuit court erred in refusing to give justification-by-necessity instructions to the jury.  Defendant correctly argues that he presented evidence at trial that, if believed, constituted substantial evidence that he was justified in defending himself and his wife ("Wife") against abuse by Newton County Sheriff's deputies.  The judgment of the circuit court is reversed, and the case is remanded for a new trial.

---

[1] The jury found Defendant not guilty of a third count that charged Defendant with first-degree property damage.

1

**Standard of Review & Relevant Evidence**

We review the circuit court's failure to give a requested jury instruction *de novo*. *State v. Straughter*, 643 S.W.3d 317, 321 (Mo. banc 2022). In doing so, we view the evidence in the light most favorable to the submission of the instruction. *Id.* Here, that evidence was as follows.

Defendant was being evicted from the trailer home that he and Wife resided in. As Defendant was loading his belongings into his truck, officers from the Newton County Sheriff's Department arrived to remove Defendant from the property for potential trespass. The officers asked Defendant a couple of questions. A second or two after Defendant gave his answer to the second question, the officers used their feet to "swe[ep][Defendant's] feet," and "bam, [Defendant] was on the ground." As he was falling, an officer "maced" him. One of the officers then placed a taser against his neck, and another officer "had [another taser] going to [Defendant's] [right] side[.]" Defendant testified, "At this moment I'm freaking out. I can't see, I'm buried, I'm laying [sic] in the gravel in my driveway and I started freaking out and asked, yelling for help." Knowing "everyone in the [trailer] park[,]" Defendant started yelling, "help me, help me[.]" Wife saw what was happening and yelled for officers to "get off [her] husband[.]" An officer replied to Wife, "don't worry, we're coming for you next[.]" Wife ran across the street to her sister's house and resumed her observation of the incident from inside another car.

Meanwhile, while Defendant was on the ground with his arms and legs pinned, an officer "sprayed mace directly down [Defendant's] throat after [he] told [the officers that he] already couldn't breathe." Defendant testified, "At that point I felt like they were

2

trying to kill me and I literally was on the verge of losing consciousness[.]" The officers handcuffed Defendant's wrists behind his back and "literally tossed" him into the backseat of a police cruiser. Defendant feigned unconsciousness, and his head was hanging outside one of the cruiser's doors. When Defendant saw an officer starting to slam the door shut on his neck, Defendant pulled his head back inside the car. The officers then opened both doors of the cruiser and began punching Defendant in his ribs, kidneys, and back. Defendant testified that one of the officers then "punched me right in my face and this, it busted my head open above my left eyebrow and I had blood pouring all down my face."

Defendant then heard the officers talk about "taking [him] to the creek"[2] and going to get Wife. From the back of the patrol car, Defendant saw officers cross the road and try to get Wife out of the car she was sitting in. Wanting to distract the officers to keep Wife safe, Defendant managed to pull his handcuffs around to the front of his body, unlock the window between the front and back seats of the police car, and climb into the driver's seat. Still handcuffed, Defendant started driving the patrol car toward town, where he thought security cameras would capture the incident. Defendant was also calling for help on the police radio. A chase ensued, and it finally ended when Defendant's driver-side tires hit the curb, causing the vehicle to roll. With the vehicle still upside down, an officer ran up to it and broke the driver's side window in an attempt to extract Defendant. Defendant had moved to the other side of the vehicle, and another officer was able to open the passenger-side door and pull him out of the cruiser.

---

[2] Defendant testified that he had "heard rumors of stuff happening to people at the creeks in police incidents[.]"

3

During the instruction conference, based upon MAI-CR 4th 408.20 and section 563.026,[3] Defendant requested jury instructions that would allow the jury to find him not guilty of tampering and resisting arrest if the jury believed that his actions during the incident were justified. The requested instructions read as follows:[4]

PART A – GENERAL INSTRUCTIONS

One of the issues as to Count I in this case is whether the conduct of [Defendant] was justified as an emergency measure. In this state, conduct which would otherwise be an offense can be lawful in certain circumstances.

In order for conduct which would otherwise be an offense to be lawful, it must be necessary as an emergency measure to avoid an imminent public or private injury which is about to occur through through [sic] no fault of [Defendant] and this injury must be so serious that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the harm or injury sought to be prevented by the statute making the conduct an offense.

The necessity and justification for the conduct, however, cannot be based only on the morality of advisability of the statute making such conduct an offense.

PART B – SPECIFIC INSTRUCTIONS

As to Count I, if you find and believe from the evidence beyond a reasonable doubt that [Defendant] engaged in the conduct submitted in Instruction No. _____, you will then decide whether that conduct was lawful as an emergency measure.

If you find and believe from the evidence that it is more probably true than not true:

First, that through no fault of [D]efendant imminent danger of serious bodily harm or death was about to occur, and

Second, that the conduct of [D]efendant, as submitted in Instruction No. _____, was necessary as an emergency measure to avoid such injury, and

---

[3] RSMo Cum. Supp. 2017.
[4] The requested justification instruction on Count II was identical to the instruction for Count I except for substituting "Count II" for "Count I."

4

Third, that such injury, then imminent, was of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighed the harm caused or threatened by [D]efendant's conduct as submitted in Instruction No. _____.

Then you must find [Defendant] not guilty under Count ____ by reason of justifiable emergency measures.

The circuit court refused Defendant's requested justification instructions, and the jury found him guilty on both counts.

**Analysis**

Defendant's sole point on appeal claims the circuit court erred in refusing his submitted justification instructions in that, viewed in the light most favorable to giving them, there was substantial evidence to support a finding that Defendant was justified in defending himself and Wife against abuse by officers. We agree.

A defendant is entitled to a[n] [][5] instruction if substantial evidence and the reasonable inferences drawn therefrom support the theory propounded in the requested instruction. *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019); *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002).

*Straughter*, 643 S.W.3d at 321.

Our courts have construed substantial evidence to mean "any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it." *State v. Bruner*, 541 S.W.3d 529, 540 (Mo. banc 2018) (Wilson, J., dissenting) (quoting *State v. Kinard*, 245 S.W.2d 890, 893 (Mo. 1952)); *see also State v. Stallings*, 326 Mo. 1037, 33 S.W.2d 914, 917 (Mo. 1930) (a defendant is

---

[5] While *Straughter* dealt with a self-defense instruction, the law as stated therein also applies to other defenses. *See State v. Westfall*, 75 S.W.3d 278, 280-81 (Mo. banc 2002).

5

entitled to an instruction on "any theory of the case which his evidence tended to establish").

The justification defense statute set forth in section 563.026 provides that:

1. [C]onduct which would otherwise constitute any offense other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.

2. The necessity and justifiability of conduct under subsection 1 of this section may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification[.]

Pursuant to case law, the defense of justification is limited to the following circumstances:

"(1) [T]he defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

*State v. Stewart*, 186 S.W.3d 832, 834 (Mo. App. S.D. 2006) (quoting *State v. Burkemper*, 882 S.W.2d 193, 199 (Mo. App. E.D. 1994)).

The circuit court ruled, as a matter of law, that the claimed facts and circumstances, even if established, did not constitute a justification for Defendant's actions. The circuit court's reasoning was as follows:

6

Present and imminent danger, I do not find that, even if true, the kicking by the officer would have posed a present and eminent danger justifying the escape. [. . .] [Defendant] did not exhaust other remedies. He had people present, who were clearly intent on observing and making sure that he was properly handled and those individuals had the ability to report and witness the event. And so I do not find that his attempt to resist was frankly justifiable in that situation.

Further, he used force. You know, your evidence so far, and again I understand he's still subject to cross-examination, but the evidence is in and again, you're not presenting any other evidence, other than his subjective testimony.

. . . .

In fleeing, it was clear testimony that it was high rate of speed as well as individuals being forced off the road and those are innocent people that were affected by the attempted escape. And then I truly don't understand, even if you could get past all of those factors, we still have the issue of this long drawn out escape, the decision, whether reasonable or unreasonable, to believe that the only place I can go for safety is to the Neosho Boulevard where I know there are videos. I mean, that route could have been handled in a much different way going to some location without this long drawn out risk to our community, if he truly believed that by getting to someone, he would somehow be protected from the officers. So I don't think you can get past the duty to surrender when the threatened danger had been avoided. I'm having difficulty seeing how this long drawn out escape could be justified.

"In determining whether the trial court erred by refusing to instruct the jury on the defense of justification by necessity, this court considers [Defendant]'s testimony as true to see if there is a legal basis for the instruction." *State v. Karr*, 968 S.W.2d 712, 716 (Mo. App. W.D. 1998).

Defendant testified that officers were hitting him with a taser, beating him bloody, and had sprayed mace down his throat when he was having difficulty breathing. Defendant believed that the officers were going to kill him, and while on the brink of unconsciousness in the back of a police car, he heard officers say to Wife, "don't worry, you're next[.]" Around that same time, Defendant heard Wife screaming for help and

7

saw officers trying to remove her from the car she was sitting in. Once Defendant saw the officers attempting to remove Wife from the car, Defendant testified that he was also afraid for her safety, given what the officers had done to him, and Defendant "knew [that he] had to distract [the officers] at the very least so that [Wife] would be okay."

Defendant distracted the officers by driving off in their patrol car. While driving, Defendant tried to call for help for Wife on the police radio, and he tried to avail himself of security cameras so that he would have a visual record of what was taking place (a reasonable inference being that if the officers thought their actions were being recorded, it would dissuade them from killing Defendant).

Defendant argues that this testimony constituted substantial evidence that "he was faced with a clear and imminent danger when he heard the officers – who had already beaten him, tased him, and maced him – say they were going to 'get' [Wife] and heard her screaming for help." Viewing the evidence in the light most favorable to the submission of the instructions -- as we must -- we agree.

The fatal flaws in the circuit court's reasoning for refusing the proffered instructions were in reducing the alleged misconduct by the officers to "kicking" and relying upon evidence unfavorable to the submission of the requested instructions. The circuit court is required to view the evidence "in the light most favorable to the defendant and 'the theory propounded by the defendant.'" *State v. Westfall*, 75 S.W.3d 278, 280 (Mo banc 2002) (internal citation omitted).

Rather than disregarding inconsistent evidence, *see id.* at 281, the circuit court relied on such evidence as reasons to deny giving the instructions: (1) Defendant's escape route could have been handled in a different way; (2) the only testimony presented

8

on the subject was Defendant's subjective testimony; and (3) Defendant's attempt to resist and long drawn out escape were not justifiable under the circumstances. The circuit court continually discounted Defendant's "subjective opinion" about whether his actions were justified by necessity, considering it insufficient to support the giving of the instructions. Our high court recently reaffirmed that "such considerations have no place in the analysis for determining whether a defendant is entitled to a requested instruction." *State v. Barnett*, 577 S.W.3d 124, 132 (Mo. banc 2019). "[S]ubstantial evidence . . . requiring an instruction may come from the defendant alone." *Id.*; *see also Westfall*, 75 S.W.3d at 280.

Because the proffered instructions were supported by substantial evidence, the circuit court erred in refusing to give them, and Defendant was deprived of a defense that he was entitled to present to the jury. *See id.* at 284 (the failure to give a required instruction is presumed prejudicial to the defendant unless the State clearly establishes otherwise (citation omitted)).

The judgment of the circuit court is reversed, and the case is remanded for a new trial.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS