

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED110234 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| v. | ) | 19CG-CR01716-01 |
| | ) | |
| SARA M. EYLER, | ) | Honorable Scott A. Lipke |
| | ) | |
| Appellant. | ) | Filed: February 7, 2023 |

Sara Eyler appeals the judgment convicting her of one count of property damage in the first degree, section 569.100.1(1), RSMo 2016,[1] and sentencing her to three years of imprisonment with a suspended execution of the sentence and five years of probation. Eyler claims the circuit court erroneously refused to instruct the jury on the affirmative defense of justification by necessity because there was sufficient evidence to support the instruction. She also claims the circuit court erroneously overruled her motion for a judgment of acquittal because there was insufficient evidence the property damage exceeded $750. We affirm.

---

[1] All statutory citations are to RSMo 2016.

**Factual and Procedural Background**

On August 25, 2019, Kate Yarbro and her fiancé, Derek, requested a ride from Uber, an online ridesharing service. Eyler, an Uber driver, responded and drove the couple home. Ms. Yarbro left her cell phone in Eyler's car. Later that morning, another passenger found Ms. Yarbro's phone and gave it to Eyler. In the meantime, after arriving home, Ms. Yarbro discovered her phone was missing. She used the "Find My iPhone" feature to determine the phone was at an apartment building. The Yarbros went to the apartment building, found Eyler's car in the parking lot, and left a note on the windshield asking her to call and confirm if she had the phone. She did not call back.

The Yarbros called Eyler through Uber's website. Eyler said she was busy and would call back to determine a convenient place to return the phone. Eventually, she decided to take the phone to the police station because she was no longer willing to meet the Yarbros in person.

As Eyler was leaving for the police station, Ms. Yarbro called again. Eyler answered. The conversation became argumentative. Eyler threw the phone out of her car window because she believed the Yarbros were tracking her with the phone and threatening her. The phone was damaged beyond repair and rendered unusable. Ms. Yarbro had purchased the phone two months earlier for $1,149.99.

The State charged Eyler with one count of property damage in the first degree. The case proceeded to a jury trial. At the close of evidence, Eyler proposed an instruction on the defense of justification as set forth in MAI-CR 4th 408.20. The State objected. The circuit court rejected the instruction, finding there was no clear and imminent danger as opposed to a speculative one. The jury found Eyler guilty of property damage in the first degree. The court sentenced her to three

years of imprisonment, but suspended execution of the sentence and placed her on five years of probation. Eyler appeals.[2]

## Analysis

1. *The circuit court did not commit instructional error.*

In her first point, Eyler claims the circuit court erred by refusing her proposed instruction on the defense of justification by necessity pursuant to section 563.026 because the evidence showed she "believed … the Yarbros were tracking her using the cell phone, they had threatened her, and she believed if she got rid of the phone, they could no longer track her, and there were no other reasonable alternatives to stop the danger she perceived."

An appellate court "reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Straughter*, 643 S.W.3d 317, 321 (Mo. banc 2022) (internal quotation omitted). A criminal defendant "is entitled to an instruction … if there is substantial evidence to support the theory propounded in the requested instruction[.]" *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019). The evidence and inferences therefrom must be viewed favorably to the defendant. *Id*. at 129. "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Id*. at 128. Thus, out of respect for the jury's role as the ultimate arbiter of the facts, "when the evidence supports two conflicting versions of events, even when both versions have been provided by the defendant, the court must refrain from determining which version is correct" and submit a properly tendered instruction. *Id*. at 127.[3]

---

[2] Additional facts specific to each point relied on are set forth in the analysis.

[3] This Court recognizes the issue in *Barnett* and *Straughter* was whether the circuit court should have instructed on self-defense under the specific facts of those cases. The factual elements of self-defense set in section 536.031 are different than the elements of justification in section 536.026. The fact these defenses are predicated on different

3

In pertinent part, section 563.026.1 provides:

> [C]onduct which would otherwise constitute any offense … is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.

"The corresponding jury instruction, [MAI–CR 4th 408.20], is to be given when the claimed facts and circumstances, if true, are legally sufficient to support the instruction." *State v. Harding*, 528 S.W.3d 362, 379 (Mo. App. E.D. 2017) (internal quotation omitted).

"The application of the defense of justification by necessity under section 563.026 is extremely limited." *State v. Stewart*, 186 S.W.3d 832, 834 (Mo. App. S.D. 2006). The defense has "very narrow limits" and "[n]othing less than an uncontrollable necessity, which admits of no compromise and cannot be resisted will be held a justification of the offense." *State v. O'Brien*, 784 S.W.2d 187, 189 (Mo. App. E.D. 1989). "Any rule less stringent than this would open the door to all sorts of fraud." *Id*. The defense is therefore limited to circumstances in which the defendant, through no fault of their own:

> (1) … is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*State v. Zuidema,* 552 S.W.3d 186, 190 (Mo. App. W.D. 2018) (internal quotation omitted).[4]

---

elements does not, however, negate the underlying general principle that it is the jury, not the court, that is "tasked with determining which version of" of the evidence to believe. *Barnett*, 577 S.W.3d at 127. Consistent with this general principle, this Court's review is limited to determining whether there was substantial evidence supporting each element of the justification defense.

[4] *See also Stewart*, 186 S.W.3d at 834; *State v. Burkemper*, 882 S.W.2d 193, 199 (Mo. App. E.D. 1994).

Viewed in the light most favorable to Eyler, the evidence supporting a justification instruction is as follows. As Eyler drove the Yarbros home, Mr. Yarbro stated he sold "body parts" for a living and indicated Eyler's body parts could be for sale as well.[5] Eyler testified she was "rattled" by this conversation and that she never had a conversation with a passenger that made her feel so scared.

After speaking with Ms. Yarbro about returning the phone, Eyler realized they were the "body parts people," and concluded she did not want to meet them in person. Eyler was concerned by the fact the Yarbros had tracked her to her home, ignored "No Trespassing" signs at her apartment building, and left a note on her car. Eyler concluded they were tracking her with the phone because Ms. Yarbro called the moment she was leaving for the police station. At this point, her "blood ran cold" and her concern was heightened because her two small children were also in the car.

As she drove to the police station, Eyler told Ms. Yarbro that she was taking the phone to the police station. Ms. Yarbro threatened to have her charged with stealing. Eyler then threw the phone out the window because she believed the Yarbros were tracking her with the phone and threatening her and her children. She concluded the police station was not safe because Ms. Yarbro told her she had no problem meeting her at the police station even if Eyler's children were present. She also recalled a news story reporting that someone had been shot outside a Missouri police station with their children present.

After throwing the phone out the window, Eyler went back to make sure it was not lying in the roadway. She did not find the phone and left in order to avoid the possibility of meeting the Yarbros. Eyler called a police dispatcher to report that she threw the phone out the window

---

[5] In addition to witness testimony, the circuit court admitted into evidence video of the conversation between the Yarbros and Eyler during the Uber ride.

because she was felt threatened, her children were with her, and she believed the Yarbros were using the phone to track her.

As required by section 563.026.2, the circuit court concluded as a matter of law the claimed facts and circumstances did not support the proposed justification instruction. Specifically, the circuit court concluded there was no substantial evidence Eyler faced a clear and imminent danger as opposed to a speculative one. The circuit court's conclusion is correct.

Taken as true, the evidence shows Eyler was scared and felt threatened because the Yarbros were tracking her with the phone. The statute, however, requires evidence supporting the additional element that the criminal act was an "emergency measure to avoid an *imminent* … injury which is *about to occur*[.]" Section 563.026.1 (emphasis added). This temporal element of imminence is "[c]rucial to the application of the doctrine" and is linked inextricably to the necessity of showing "an emergency situation." *State v. Diener*, 706 S.W.2d 582, 585 (Mo. App. E.D. 1986). Moreover, while this Court must give Eyler the benefit of all reasonable inferences from the evidence, *Barnett*, 577 S.W.3d at 129, those inferences are drawn in the context of an "extremely limited" defense with an express temporal limitation. *Stewart*, 186 S.W.3d at 834.

Assessed against the specific elements of the justification defense, the fact Eyler was scared and felt threatened is not substantial evidence supporting the additional, separate requirement that she faced a "clear and imminent danger, not one which is debatable or speculative." *Zuidema,* 552 S.W.3d at 190. On this record, requiring submission of a justification instruction would read the imminent danger element out of the statute, thereby negating the "emergency" situation on which the defense is premised.

6

The evidence was legally insufficient to support Eyler's proposed justification instruction. For these reasons, the circuit court did not erroneously refuse to instruct the jury on the defense of justification. Point I is denied.

2. *There was sufficient evidence of value.*

In her second point, Eyler argues the circuit court erroneously overruled her motion for judgment of acquittal because there was insufficient evidence she caused over $750 in property damage.

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Bennish*, 479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015). An appellate court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Minor,* 648 S.W.3d at 736.

In pertinent part, section 569.100.1(1) provides "[a] person commits the offense of property damage in the first degree if such person: [k]nowingly damages property of another to an extent exceeding seven hundred fifty dollars[.]" The property owner's opinion of value before and after the defendant's actions "is sufficient to take the issue that the [property] was damaged in excess of [a certain amount] to the jury." *State v. Carson*, 898 S.W.2d 555, 557 (Mo. App. W.D. 1995); *see also State v. Kelly*, 365 S.W.2d 602, 605 (Mo. 1963) (holding a property owner's testimony

"is usually deemed to be competent and substantial evidence" of value and that "[t]he weight of such evidence is for the jury").

Viewed in the light most favorable to the verdict, there was evidence Ms. Yarbro purchased the phone on June 20, 2019, for $1,149.99. Approximately two months later, Eyler damaged the phone beyond repair and rendered it unusable. Because the phone was damaged beyond repair and rendered unusable a mere two months after Ms. Yarbro purchased it, a reasonable jury could find the phone had minimal value and, therefore, that Eyler caused more than $750 in property damage. *Cf. Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 43 (Mo. banc 1976) (holding the general measure of damages for injury to personal property is the difference between its reasonable market value before and after the damage); *see also Orr v. Williams*, 379 S.W.2d 181, 189 (Mo. App. 1964) (holding that when personal property is "entirely destroyed," the owner may recover "the full value of the destroyed chattel").

Against this straightforward analysis, Eyler argues there was insufficient evidence she caused $750 in damage because the phone was insured with a replacement cost of $170. Eyler asserts the definition of "value" used in section 570.020 indicates the "cost of replacement" should define the "extent" of property damage under section 569.100.1. This argument is foreclosed by the plain language of both statutes.

"The primary goal of statutory interpretation is to discern the legislature's intent as evidenced by the text and to consider the words in their plain and ordinary meaning." *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021). Section 570.020 provides that "*for purposes of this chapter*" governing the separate offenses of robbery, stealing, and related offenses, the term "value" means "the market value … at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the

8

crime." (Emphasis added). The plain language of section 570.020 limits that definition of "value" to the specific offenses defined in Chapter 570 and does not include the offense of property damage. Moreover, the relevant statute in this case, section 569.100.1, defines the offense of property damage by reference to the "extent" a person "damages property of another" with no reference to the insurance value or replacement cost. Eyler's reliance on section 570.020 is misplaced.

Alternatively, she argues the State failed to prove the phone's value exceeded $750 as of the date of the offense because Ms. Yarbro purchased the phone two months earlier. Eyler relies on *State v. Brown*, 457 S.W.3d 772 (Mo. App. E.D. 2014)[6] and *State v. Watkins*, 804 S.W.2d 859 (Mo. App. E.D. 1991). Both cases are distinguishable.

In *Brown*, the defendant stole a television the victim had purchased three years earlier for $749.99. *Id.* at 785. The defendant pawned the television for $140. *Id*. This Court held there was insufficient evidence to support the stealing conviction because the State "adduced no evidence that the market value of the television at the time and place of the crime was $500 or more." *Id*.

Unlike *Brown*, the State adduced evidence of value through Ms. Yarbro's testimony that she purchased the phone for $1,149.99 two months prior to the date of the offense. As established, this is sufficient evidence to for a reasonable juror to conclude Eyler caused more than $750 in property damage when she damaged the phone beyond repair and rendered it unusable.

In *Watkins*, the issue was the sufficiency of the evidence supporting a felony conviction for leaving the scene of an accident. A necessary element of the offense was "property damage in excess of $1,000." *Watkins*, 804 S.W.2d at 860. This Court reversed the conviction because "no

---

[6] *Brown* was overruled on other grounds by *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016). *State v. Turrentine*, 524 S.W.3d 55, 58 n.5 (Mo. App. S.D. 2016).

monetary value was in evidence" and "the jury was without evidence to support a finding of monetary damage." *Id*. at 861. The requisite evidence of value, however, could likely have been elicited with just "[o]ne additional question to the owner … [which] would in all probability have established the monetary damage." *Id*. Here, unlike *Watkins*, the prosecutor elicited the owner's testimony showing the cost of the phone, the date of purchase, and the extent of the damage. Neither *Brown* nor *Watkins* supports Eyler's argument.

There was sufficient evidence for a reasonable jury to conclude Eyler caused "damages … to an extent exceeding seven hundred fifty dollars[.]" The circuit court did not erroneously overrule the motion for judgment of acquittal. Point II is denied.

## Conclusion

We affirm the circuit court's judgment.

_____
Renée D. Hardin-Tammons, Judge

Lisa P. Page, P.J. and
Thomas C. Clark, II, J., concur.

10