

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110634 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| vs. | ) | 21JE-CR02817-01 |
| | ) | |
| TIMOTHY O'HARA, | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Appellant. | ) | Filed: March 12, 2024 |

Before John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

**Introduction**

On September 22, 2021, around 4:00 a.m., B.K. (Wife) was awoken by appellant Timothy O'Hara breaking through the glass of her front door in Jefferson County, Missouri and then bursting through her bedroom door with a knife in hand. O'Hara threatened to kill Wife, C.K. (Husband), and an imaginary kidnapping victim O'Hara believed he saw dragged across the Victims' lawn by an unknown assailant and into Victims' home.

As O'Hara repeatedly threatened to kill the couple, Wife was able to place a phone call to the couple's son who overheard those threats. As Husband and O'Hara struggled over a firearm on the front porch, police arrived and arrested O'Hara. Police determined that O'Hara had imagined the kidnapping victim that he was purporting to rescue which likely was the result of the methamphetamine O'Hara had injected two hours earlier.

After a jury trial, O'Hara was convicted of the felonies of fourth-degree assault, second-degree burglary, and unlawful use of a weapon. O'Hara was sentenced to one year for the assault, seven years for the burglary, and four years for the unlawful use of a weapon with the sentences ordered to be served concurrently to one another and consecutively to any other sentences he was subject to at the time of his sentencing. The trial court refused O'Hara's proffered emergency measures jury instruction finding no substantial evidence to support his mistaken belief that this elderly couple had a kidnapped woman in their home.

O'Hara now appeals alleging four points of error. In Points I-III he alleges that the trial court erred in refusing his emergency measures jury instruction. Point IV alleges the State did not present sufficient evidence to convict O'Hara of second-degree burglary, in that the State did not prove O'Hara burgled the home for the purpose of committing the crime of unlawful use of a weapon. O'Hara's four points are denied, and the trial court's judgment is affirmed.

**Background**

The Victims here were an elderly Jefferson County couple who had been married for fifty years and had resided in the home for the last fifteen years. After shattering the glass of the front door to gain entry, O'Hara burst into Wife's bedroom swinging a knife. Husband, asleep in another room, awoke to Wife screaming that someone had broken into their house. Husband entered Wife's room to the sight of O'Hara with a knife in one hand and a hammer in the other and O'Hara told them that if they did not show him where the kidnapping victim was hidden, he would kill them.

Husband proceeded to show O'Hara all the rooms in the home while O'Hara threatened him with the knife. As Husband showed O'Hara around the home, Wife called her son and told him there was an intruder in their home. Son heard O'Hara threaten to kill his parents, so he

2

called 911 and then proceeded to the scene. Wife's daughter-in-law stayed on the phone with Wife and heard O'Hara say, "When I find her, I'll kill you all."

After his fruitless search of the home, O'Hara re-entered Wife's room. Husband then ran across the street and got a gun from a neighbor. Upon his return, O'Hara saw the gun, tackled Husband onto the broken glass at the front door, and grabbed the gun.

Police arrived and found O'Hara with the gun in his hand on the front porch with Husband bent over on the ground. O'Hara yelled to the officers about the kidnapped woman and officers noted he showed signs consistent with methamphetamine use. O'Hara later admitted he was under the influence of methamphetamine. Police searched the house, found no kidnapped woman, and arrested O'Hara.

At trial, O'Hara proffered instruction MAI-CR 4th 408.20 (Emergency Measures) for the four charges he faced. O'Hara alleged he broke into the house to save a woman being held inside and not for the purpose of the unlawful use of a weapon. The trial court determined there was not substantial evidence warranting the emergency measures instruction and declined to submit it to the jury.

## Discussion

### *Points I-III*

In Points I-III, O'Hara alleges the trial court erred in refusing his emergency measures instruction, which postulated his justification-by-necessity defense, because it denied him his constitutional rights to due process of law and a fair trial. We disagree.

We review the refusal to give a jury instruction *de novo*. *State v. Welch*, 600 S.W.3d 796, 806 (Mo. App. E.D. 2020). A trial court is required to give the emergency measures or necessity jury instruction "when the claimed facts and circumstances, if true, are legally sufficient to

3

support the instruction." *State v. Eyler*, 663 S.W.3d 834, 838 (Mo. App. E.D. 2023) (quoting *State v. Harding*, 528 S.W.3d 362, 379 (Mo. App. E.D. 2017)). "In order for a defendant to be entitled to an instruction on this affirmative defense, the defendant has the burden of producing substantial evidence that he performed the criminal act to avoid a significant harm, that there was no adequate alternative to this illegal conduct and that the harm caused was not disproportionate to the harm avoided." *Id*.

Governed by section 563.026 (RSMo 2016), the defense of justification provides in part:

[C]onduct which would otherwise constitute any offense other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.

The defense is limited to circumstances where (1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue. *State v. Stewart*, 186 S.W.3d 832, 834 (Mo. App. S.D. 2006).

With the foregoing legal principles in mind, we hold that the trial court did not err in refusing to give the emergency measures instruction. O'Hara's false and likely methamphetamine-induced belief that he saw a woman being dragged into the couple's home fails the first part of the defense – a clear and imminent danger. *Id*. An imaginary danger is no danger in this context. Other than O'Hara's imagination, there is no evidence to support giving that instruction. But what is unimaginable is the terror to which O'Hara subjected this couple.

4

*Point IV*

In Point IV, O'Hara argues the trial court erred by denying his motion for judgment of acquittal, by denying his motion for a new trial, and by sentencing him on the second-degree burglary charge because the State failed to prove he entered the couple's home for the purpose of committing the crime of unlawful use of a weapon. We deny Point IV because the State provided sufficient evidence of O'Hara's intent to commit that crime.

Our review is limited to "whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015). "A person commits the offense of burglary in the second degree when he or she knowingly enters unlawfully or knowingly remained unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Section 569.170 (RSMo 2016).

Turning to the record in this case, the State alleged and sufficiently proved that O'Hara entered the residence for the purpose of committing the crime of unlawful use of a weapon. The evidence establishes that O'Hara entered the couple's home with a knife and then repeatedly threatened to kill Husband and Wife with the knife. Section 569.170. In the context of his imaginary belief, the jury could have concluded that he entered Victims' home with the intent to use the knife to solve an emergency of his own creation. Additionally, the jury was free to disbelieve O'Hara's testimony about the imaginary kidnapping victim and instead could have concluded that in a drug-induced state he broke in with the intent to attack this couple with a knife and simply fabricated the kidnapping victim. "A jury always can disbelieve all or any part of the evidence, just as it always may refuse to draw inferences from that evidence." *State v. Jackson*, 433 S.W.3d 390, 392 (Mo. banc 2014).

5

**Conclusion**

For the foregoing reasons, O'Hara's convictions and sentences are affirmed.

_____
James M. Dowd, Judge

John P. Torbitzky, P.J. and
Michael S. Wright, J., concur.