STATE of Missouri, Respondent,

v.

Robert R. COX, Appellant.

No. WD 67832.

Missouri Court of Appeals,
Western District.

Jan. 2, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 4, 2008.

Application for Transfer Denied
April 15, 2008.

Daniel L. Viets, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun Mackelprang and Jaime Wilson Corman, Office of Attorney General, Jefferson City, for Respondent.

PAUL M. SPINDEN, Judge.

Robert R. Cox appeals the circuit court's judgment convicting him of the Class B felony of possessing a controlled substance with the intent to distribute in violation of Section 195.211, RSMo 2000.

Robert Cox's conviction resulted from a traffic stop on March 31, 2005, in Saline County by Corporal Darrell Lilleman of the State Highway Patrol. Lilleman stopped Cox's vehicle on U.S. 65 after noticing that the window tinting on Cox's car appeared to violate state law. As Lilleman investigated, he recognized the car's driver, Cox, as being on probation for a drug violation. Kristina King was a passenger in the car and was sitting in the front seat. While discussing the window tinting with Cox, Lilleman saw a package of canned beer on the vehicle's back seat and asked Cox whether or not he had been drinking. Cox denied that he had been drinking. Lilleman then asked whether or not Cox had been staying "clean," and Cox replied that he had been. Lilleman asked whether or not Cox was carrying any drugs in the car. Cox declared that no drugs were in the car, and he offered to let Lilleman search the car. Lilleman said that he would accept the offer.

Lilleman radioed for assistance with the search. After another officer arrived, Lilleman asked Cox to confirm his consent to the search, and Cox did. When Lilleman took the beer package out of the car, Cox said, "It's mine. [King] doesn't know anything about it." Lilleman found a bag of marijuana inside it. Lilleman found four other bags of marijuana in the car. The marijuana was compressed and weighed more than 4.5 pounds.

Cox asked the circuit court to suppress the marijuana on the ground that Lilleman's search violated his rights guaranteed by the Fourth Amendment to the United States Constitution. The circuit court convened a suppression hearing and denied the motion. Immediately before trial before the judge, Cox notified the circuit court that he intended to claim the defense of necessity: He asserted that he needed the marijuana for his medical problems. The circuit court ruled that, as a matter of law, the defense was not available to him. The circuit court found him guilty as charged.

In his first point on appeal, Cox asserts that the circuit court erred in overruling his motion for acquittal. He claims that

the State did not prove an essential element, that he intended to distribute the marijuana. In reviewing such a claim, we deem all evidence tending to support guilt as true, and we ignore all contrary evidence. *State v. Young*, 172 S.W.3d 494, 496–97 (Mo.App.2005).

The State charged Cox with the Class B felony of possessing marijuana with the intent to distribute it in violation of Section 195.211, RSMo 2000. The State's information averred:

> [O]n or about March 31, 2005, in the County of Saline, State of Missouri, the defendant, acting either alone or knowingly in concert with another person or persons, with the intent to distribute, possessed more than 5 grams of marijuana, a controlled substance, knowing of its presence and nature.

To meet its burden, the State was obligated to prove beyond a reasonable doubt that Cox (1) consciously and intentionally possessed marijuana (2) with an awareness of its presence and its nature and (3) with an intent to distribute it. *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App.2003). Cox concedes that the State presented sufficient evidence to meet its burden of proving the first two elements but alleges that the State failed to prove that he intended to distribute the marijuana.

Cox argues that "the alleged marijuana was not packaged for distribution, there was no large sum of cash seized, and appellant testified that it was solely for personal use." These factors, however, are not the only pertinent ones. That Cox had nearly five pounds of marijuana that was compressed—a form suitable more for distribution than for personal consumption—were also significant factors. As this court noted in *State v. McCleod*, 186 S.W.3d 439, 447 (Mo.App. 2006):

Certainly, at some point, the amount of a controlled substance in a defendant's possession can establish, beyond a reasonable doubt, that the defendant intended to deliver or distribute that substance to others. ... Conversely, ' "[p]roof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred." ' ... ' "[P]roof of possession with an intent to distribute or sell should not be based solely upon surmise or suspicion. There must be evidentiary facts which will rationally produce in the minds of jurors a certainty, a conviction beyond a reasonable doubt that the defendant did in actual fact intend to distribute or sell the [controlled substance], not that he might have such intent." ' ... 'Intent to distribute may be inferred solely from the possession of an amount of controlled substance too large to be used by the possessor alone.' 'On the other hand, a quantity that is consistent with personal use does not raise such an inference in the absence of other evidence.' ... For the quantity alone to sufficiently support a finding, beyond a reasonable doubt, of intent to deliver or distribute the controlled substance, the amount must be inconsistent with personal use. ... Thus, the amount of the controlled substance found in the defendant's possession must be sufficiently large that a jury could find beyond a reasonable doubt that the drugs are not for the defendant's personal use and are intended for distribution. ...

Lilleman seized 4.65 pounds of marijuana from Cox's vehicle. Sergeant Troy Blunt, an expert in narcotics, testified that the average marijuana user would expend several years depleting this amount in personal consumption. Blunt also testified that compressed marijuana is in a form not suitable for personal con-

sumption. The large quantity and the marijuana's compression were, therefore, significant factors that supported the circuit court's inference that Cox intended to distribute the marijuana. *State v. Fairow*, 991 S.W.2d 712, 714 (Mo.App.1999).

In his second point, Cox claims that the circuit court erred in overruling his motion to suppress the marijuana because the search resulted from an unlawful detention. Cox asserts that Lilleman exceeded the scope of a lawful detention by asking him questions that were not "germane to the traffic stop." He adds that, because he consented to search only because of Lilleman's questions and because the questions occurred beyond the scope of a lawful detention, the search violated his rights guaranteed by the Fourth Amendment.[1]

 Our review of the circuit court's denial of a motion to suppress is limited to determining whether or not substantial evidence supported the ruling. We view the evidence in the light most favorable to the circuit court's ruling and defer to the circuit court's determination of witness credibility. *State v. Ramires*, 152 S.W.3d 385, 390–91 (Mo.App.2004). The issue of whether or not officers violated the rights guaranteed to Cox by the Fourth Amendment is a question of law that we review *de novo*. *Id.* at 391.

 A search or seizure conducted without a warrant is *per se* unreasonable unless it falls within established and well-delineated exceptions, and the burden falls on the State to justify a warrantless search or seizure. *Id.* at 391, 394–95. In determining whether or not a warrantless search falls within an exception to the warrant requirement, we consider what the officer had reason to believe at the

time of his search. *State v. Childress*, 828 S.W.2d 935, 944 (Mo.App.1992).

 A routine traffic stop based on a state traffic law violation is a justifiable seizure under the Fourth Amendment. *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004). Police may detain a person for a routine traffic violation, but only for as long as necessary to conduct a reasonable investigation of the traffic violation. *Id.* When an officer concludes a routine traffic stop by issuing a warning or citation, the officer must permit a driver to leave unless the officer develops a reasonable suspicion, based on specific, articulated facts, that the driver is involved in criminal activity. *Id.* at 517.

Cox concedes that Lilleman had a lawful basis for stopping him. He asserts, however, that Lilleman exceeded the scope of his authority by asking questions about alcohol and drugs that were not related to the legality of his tinted car windows.

 That "[a] law enforcement official may, at any time during a routine traffic stop, ask a citizen if he has contraband on his person or in his car and may ask for permission to search" is a well-established principle of law. *State v. Haldiman*, 106 S.W.3d 529, 535 (Mo.App. 2003). *See State v. Lord*, 43 S.W.3d 888, 891 (Mo.App.2001).

Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public— for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or

---

1. Article I, Section 15, of Missouri's constitution guarantees the same rights. *State v. Ra-* *mires*, 152 S.W.3d 385, 391 (Mo.App.2004).

extract information without the suspects' consent.

*United States v. Childs,* 277 F.3d 947, 954 (7th Cir.2002) (en banc). If a person freely and voluntarily consents to a search, the Fourth Amendment does not prohibit the search, even if it would not be otherwise lawful. *Lord,* 43 S.W.3d at 891.

■ After measuring the tint of Cox's windows, Lilleman saw the package of beer in Cox's car. He asked Cox whether or not he had consumed any alcohol, whether or not he was "clean," and whether or not he had any drugs in the vehicle. In response to the last question, Cox voluntarily offered to let Lilleman search his car. At that point, although Lilleman had determined that the tinting on Cox's windows violated state law, Lilleman had not issued a warning or citation to Cox. He was still investigating the traffic violation. In light of Lilleman's seeing the beer in the car and knowledge of Cox's probation for a drug violation, the circuit court had a sound basis for concluding that Lilleman's questions held potential for detecting crime without creating inconvenience and for concluding that Lilleman did not intend for the questions to prolong unreasonably his investigation of the traffic violation for the purpose of uncovering evidence of other crimes. The search, therefore, did not violate the Fourth Amendment. *State v. Jones,* 204 S.W.3d 287, 292–93 (Mo.App. 2006); *State v. Fulliam,* 154 S.W.3d 423, 426 (Mo.App.2005). When Cox offered to let Lilleman search his vehicle, the entire stop had lasted only a couple of minutes.

In support of his claim, Cox relies exclusively on *State v. Maginnis,* 150 S.W.3d 117, 122–23 (Mo.App.2004). In that case, an officer stopped the defendant to investigate three minor traffic violations. After asking the defendant to get out of his vehicle and to get into the officer's patrol car, the officer asked the defendant dozens of questions not related to the alleged traffic violations. The officer then left the defendant in the patrol car while he interrogated a passenger in the defendant's vehicle. Because of inconsistencies in their stories, the officer asked the defendant more questions. The officer spent at least ten minutes questioning the defendant and his passenger before asking the defendant for permission to search his car. The officer warned that he would have a dog sniff the car if the defendant refused his request to search the car. The defendant refused, and a dog brought to the scene indicated that it smelled drugs in the vehicle. The defendant moved to suppress the evidence of the drugs on the basis that the police officer illegally detained him. On appeal, this court concluded that the circuit court erred in overruling his suppression motion because "the officer's questions delayed the resolution of the traffic violation and impermissibly detained Maginnis beyond what was reasonable in view of the nature of the stop." *Maginnis,* 150 S.W.3d at 123.

Unlike the situation in *Maginnis,* Lilleman did not ask unrelated questions and did not extend the duration of the traffic stop or engage in a fishing expedition to uncover facts of other crimes. Moreover, unlike the defendant in *Maginnis,* Cox volunteered his permission to have Lilleman search his car. Lilleman did not ask for permission or make any threat if permission were denied. Hence, *Maginnis* does not aid Cox.

■ In his third point, Cox claims that the circuit court erred in excluding evidence regarding his medical need for marijuana to relieve his pain and suffering from his spinal cord injury because Section 563.026, RSMo 2000, makes medical necessity a valid defense to a possession of a controlled substance charge. The statute says:

1. Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.

2. The necessity and justifiability of conduct under subsection 1 may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.

This court has long held that the necessity defense in Section 563.026 is limited to circumstances in which:

"(1) [T]he defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

*State v. Stewart*, 186 S.W.3d 832, 834 (Mo.App.2006) (citation omitted).

The circuit court did not err in excluding Cox's defense. The General Assembly has acted to preclude medical necessity as a defense to a charge of possessing marijuana. Under the Comprehensive Drug Control Act of 1989, the legislature classified marijuana as a Schedule I substance. Section 195.017.2(4), RSMo Supp.2006. In making this classification, the General Assembly determined that marijuana "(1)[h]as high potential for abuse; and . . . (2)[h]as no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." Section 195.017.1. The General Assembly's classification precluded the circuit court from deeming Cox's use of marijuana as necessary for medical purposes.

Cox concedes that marijuana is classified as a Schedule I substance, but he argues that this classification does not constitute a clear and deliberate statement by the General Assembly because Section 195.050, RSMo 2000, permits the dispensing of Schedule I substances by certain professionals. Cox reasons that, because Section 195.050 envisions the dispensing of certain Schedule I substances by certain professionals, the mere classification of marijuana as a Schedule I substance ·cannot be read as a declaration by the General Assembly that it has no accepted medical use or lacks accepted safety for medical treatment.

We reject the argument. Section 195.050 strictly limits the dispensing of Schedule I substances to the persons or entities listed in Section 195.050, and it creates strict guidelines for their distribution. Cox could not show the circuit court that his situation fit within any of Section 195.050's exceptions, and he points to nothing in Section 195.050 that authorizes

marijuana possession by private citizens for medicinal purposes. Merely because Section 195.050 authorizes distribution of certain Schedule I substances to certain professionals does not indicate that the General Assembly, by labeling marijuana a Schedule I substance, has not made a clear and deliberate determination that marijuana has no acceptable medical use when not dispensed by a professional under the constrictors of Section 195.050. Hence, the circuit court did not err in finding that as a matter of law that the defense of necessity was unavailable to Cox.

VICTOR C. HOWARD, Chief Judge, and RONALD R. HOLLIGER, Judge, concur.