

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
                                                  )

*Opinion issued March 21, 2023*

Respondent, )
                                                  )

v. )
                                                  )

No. SC99799

JASON MICHAEL HURST, )
                                                  )

Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY**
**The Honorable Kevin L. Selby, Judge**

Jason Hurst appeals his judgment of conviction for first-degree tampering and resisting arrest. The conviction stemmed from an incident in which he stole a police vehicle and drove it in a reckless manner, endangering many persons for more than 10 miles in a high-speed vehicle chase. Hurst contends the circuit court erred in refusing to give his proffered jury instructions on the defense of necessity because he presented substantial evidence that his actions were justified to protect himself and his wife from possible abuse by police. Because there was not substantial evidence to show Hurst was entitled to necessity jury instructions, the circuit court's judgment is affirmed.

**Background**

In November 2017, Hurst was evicted from the trailer park where he and his wife lived. On the day of the eviction, officers with the Newton County Sheriff's Department arrived to find Hurst and his wife present at the trailer park. It was later determined that Hurst was under the influence of multiple controlled substances at the time. The officers repeatedly informed Hurst he needed to leave and warned he would be arrested and charged with trespassing if he did not, but he refused. Accordingly, the officers informed Hurst he was being placed under arrest. In response, Hurst held onto the bed of his pickup truck and refused to let go. An altercation ensued when police attempted to subdue Hurst, during which the officers both maced and tased him. Hurst was eventually handcuffed and placed in the back seat of a police vehicle.

While officers attempted to remove Hurst's wife from the backseat of a relative's nearby vehicle, Hurst, while handcuffed, maneuvered himself to the front seat of the police vehicle and drove away. An extensive vehicle chase ensued, during which Hurst drove between 50 and 100 miles per hour, recklessly veering "all over the road." After fleeing from the officers' immediate vicinity, Hurst stopped the vehicle and radioed for help. Rather than remaining in place and awaiting a response, he decided to drive back to the trailer park to see if his wife was safe. In doing so, Hurst fled back past the chasing police, nearly colliding with another police cruiser. After confirming his wife was still in the relative's vehicle, Hurst then decided to drive into downtown Neosho, purportedly to capture any further police conduct on one of the store cameras on the main boulevard. Throughout the chase, Hurst ran stop signs, almost struck two pursuing police vehicles,

2

hit a parked vehicle, and ran an oncoming motorist off the road. The chase came to an end when, after Hurst entered Neosho, police successfully performed a Precision Immobilization Technique ("PIT") maneuver, causing Hurst to overturn the vehicle.

The State charged Hurst with first-degree tampering and resisting arrest. At trial, Hurst testified that the police initiated the physical altercation without provocation and that he had been beaten, tased, and maced to the verge of unconsciousness.[1] He further testified that, during the altercation, he heard one of the officers tell his wife, "don't worry, we're coming for you next." Hurst claimed he believed the officers were going to kill him, and he "knew [he] had to distract [the officers] at the very least so that [his wife] would be okay." Based on this testimony, Hurst proffered jury instructions for the defense of necessity pursuant to section 563.026.[2] The circuit court declined to give the instructions, finding there was not substantial evidence presented to support a necessity instruction for either charge.

The jury found Hurst guilty on both counts, and the court sentenced him as a persistent misdemeanor offender to concurrent terms of five years and four years in prison. Hurst appealed his convictions, arguing the circuit court erred in refusing to give

---

[1] Hurst's claim that police initiated the altercation without provocation was refuted by other testimony indicating Hurst repeatedly refused to leave the trailer park, despite multiple requests from police. Hurst held onto the bed of his pickup truck when police informed him he was being placed under arrest, and he refused to let go. He further engaged in a physical altercation with police as they attempted to subdue and handcuff him.

[2] All statutory references are to RSMo 2016 unless otherwise specified.

his proffered necessity instructions. After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Standard of Review

This Court reviews *de novo* the circuit court's decision whether to give a requested jury instruction. *State v. Straughter*, 643 S.W.3d 317, 321 (Mo. banc 2022). The evidence is viewed in the light most favorable to the submission of the instruction. *Id.* This Court takes the defendant's testimony regarding the facts and circumstances of the defense to be true and considers whether those facts are legally sufficient to support the instruction. *State v. Zuidema*, 552 S.W.3d 186, 187 n.1 (Mo. App. 2018).

## Analysis

The issue before this Court is whether the circuit court erred in refusing to give Hurst's proffered jury instructions on the defense of necessity. This Court has never before addressed the propriety of giving a necessity instruction. Accordingly, it is beneficial to begin with a brief background about necessity.

Necessity is a defense that was first recognized at common law.[3] *City of St. Louis v. Klocker*, 637 S.W.2d 174, 175 (Mo. App. 1982). It "is often expressed in terms of choice of evils: (w)hen the pressure of circumstances presents one with a choice of evils, the law prefers that he avoid the greater evil by bringing about the lesser evil." *Id.* (alteration in original) (internal quotation omitted). "The defense is based on social

---

[3] The defense of "necessity" is also sometimes referred to as "justification," including in section 563.026. "The two terms are, for all practical purposes, functionally synonymous." *State v. Vandiver*, 757 S.W.2d 308, 310 (Mo. App. 1988).

4

policy which recognizes that individuals should at times be free from legal restraints in order to avoid certain imminent harms." *State v. O'Brien*, 784 S.W.2d 187, 189 (Mo. App. 1989). While necessity was traditionally limited to situations involving harm from physical forces of nature, that requirement has been relaxed over time to allow the defense to also apply to harms caused by people. *Id.*

Since 1977, necessity has been codified in section 563.026. Section 563.026.1 now provides:

> Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any offense other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.

This statute establishes four elements a defendant must prove to raise a successful necessity defense; otherwise criminal conduct is "justified" when 1) it is necessary as an emergency measure 2) to avoid an imminent public or private injury 3) that is about to occur through no fault of the defendant and 4) it is objectively reasonable in light of the injury to be avoided.

Section 563.026.2 further states: "Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification." The statute evidences a legislative policy that the judge perform a gatekeeping function. A

5

court should present a necessity instruction to the jury only if it "determines that the facts and circumstances, if true, are legally sufficient to establish the defense." *Vandiver*, 757 S.W.2d at 310. Once the court decides the facts presented are sufficient to satisfy all four elements in section 563.026.1, the responsibility then falls on the jury to determine whether those facts are true.

Regarding the fourth element of section 563.026.1, the court must make a preliminary determination, as a matter of law, whether the defendant's conduct, with the evidence viewed in the light most favorable to submission of the instruction, was objectively reasonable under the circumstances, i.e., whether the harm the defendant sought to avoid outweighed the harm caused by the defendant. If the court determines the defendant's conduct falls within the bounds of objective reasonableness, the jury must ultimately decide, as a factual matter, whether the defendant's harm was outweighed by the injury avoided. *See State v. Garrison*, 171 P.3d 91, 95 (Alaska 2007) ("[T]he defendant will be entitled to an instruction on the defense if it is at least sufficient to permit a reasonable juror to find that each element of the defense has been satisfied.").

In general, a defendant is entitled to a jury instruction when "substantial evidence and the reasonable inferences drawn therefrom support the theory propounded in the requested instruction." *Straughter*, 643 S.W.3d at 321. "In making this determination, a court must view the evidence in a light most favorable to the defendant[.]" *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019) (internal quotation omitted). Substantial evidence exists if "there is evidence putting a matter in issue." *State v. Bruner*, 541 S.W.3d 529, 535 (Mo. banc 2018) (internal quotations omitted). Such evidence may

6

come from the defendant's testimony alone. *Id.* "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Westfall*, 75 S.W.3d at 280.

Here, the circuit court determined there was not substantial evidence to support a necessity instruction for either of the charges against Hurst. Upon review, the circuit court did not err because the evidence was insufficient for Hurst to prove all four elements in section 563.026.1 under either charge.

First, Hurst could not show his actions were "necessary as an emergency measure" under the circumstances. In interpreting this requirement, courts must give effect to legislative intent as reflected in the plain language of the statute. *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007). "In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary, and by considering the context of the entire statute in which it appears." *Id.* (internal citation omitted). *Webster's Third New International Dictionary* defines "necessary" as "unavoidable" and "[something] that must be done." *Webster's Third New International Dictionary of the English Language* 1510-11 (3d ed. 1993). Implicit in this definition is the traditional rule that the defendant must not have had any more reasonable alternative to the course of conduct he pursued. As the United States Supreme Court has explained: "Under any definition of [the necessity defense] one principle remains constant: if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defenses will fail." *United States v. Bailey*, 444 U.S. 394, 410 (1980) (internal quotation omitted). Hurst's actions were not

7

necessary to avoid imminent harm at the time of the offenses. His actions greatly increased the risk of harm to the public with his 10-mile high-speed vehicle chase.

Assuming, *arguendo*, Hurst had a reasonable fear of imminent harm to himself or his wife, he had several significantly more reasonable choices to prevent that harm. For example, Hurst could have simply locked himself inside the police vehicle and radioed for help from another nearby law enforcement agency. If his goal was merely to create a diversion, Hurst could have activated the vehicle's sirens or even driven a short distance to give his wife, who was situated in a nearby vehicle, time to flee. At the very minimum, Hurst could have exited the vehicle and fled on foot once he escaped the immediate vicinity of police instead of continuing to operate the vehicle while handcuffed and under the influence of controlled substances. Instead of pursuing any of these safer alternatives, Hurst engaged in a reckless, high-speed chase, which required police to perform a PIT maneuver before it came to an end. Hurst could not show this extremely dangerous behavior was necessary to abate any imminent harm he or his wife allegedly faced.

Second, to be entitled to a necessity instruction, section 563.026.1 requires that, "according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented[.]" This calls for balancing the harm of the defendant's conduct against the harm the defendant is attempting to avoid, governed by a standard of objective reasonableness. Even if Hurst's conduct was necessary to prevent alleged imminent harm to himself or his wife (which it was not), that conduct was objectively unreasonable considering the

8

threat of potential harm it posed to countless others. As noted above, Hurst engaged in a high-speed chase while driving in handcuffs and under the influence of several controlled substances. During this chase, he veered "all over the road" as he drove between 50 and 100 miles per hour, hit a parked vehicle with sufficient force to dislodge its front bumper, nearly collided with two different chasing police cruisers, drove through multiple stop signs without stopping, and drove an oncoming motorist completely off the road. Further, the chase continued until police performed a PIT maneuver that caused Hurst to overturn the vehicle. While, thankfully, no bystanders were harmed in the course of these events, the risk of such harm was obvious. Based on "ordinary standards of intelligence and morality," any imminent harm Hurst or his wife allegedly may have faced clearly was outweighed by the risk of harm to the public he caused.

Finally, Hurst could not show his "situation occasioned or developed through no fault" of his own. This entire incident began because Hurst and his wife were trespassing at the trailer park after being evicted. Hurst ignored multiple warnings from police that he would be arrested for trespassing if he did not leave the premises. When officers attempted to place Hurst under arrest, he did not comply, instead opting to cling onto the bed of his pickup truck until officers could forcibly remove him. Hurst then engaged in an altercation with police before they were finally able to subdue him. Hurst easily could have avoided any perceivable threat of harm by either not trespassing in the first place, leaving the trailer park before he was arrested, or peacefully submitting to the officers' authority when they initially attempted to place him under arrest. Instead, Hurst engaged in a course of conduct that ended with him overturning a police vehicle after a 10-mile,

9

high-speed chase. Because this situation did not develop through no fault of his own, Hurst was not entitled to instructions on the necessity defense to justify his actions.[4]

## Conclusion

Because there was not substantial evidence to show Hurst was entitled to jury instructions on the defense of necessity, the circuit court's judgment is affirmed.[5]

_____
Mary R. Russell, Judge

Wilson, C.J., Breckenridge, Draper, Fischer, and Ransom, JJ., concur;
Powell, J., concurs in separate opinion filed.

_____

[4] Hurst also contends the evidence was insufficient to support his resisting arrest conviction because, under the holding of *State v. Ajak*, 543 S.W.3d 43 (Mo. banc 2018), his arrest was complete once he was handcuffed and placed in the back of a police vehicle. In *Ajak*, this Court held that, for the purposes of the offense of resisting arrest, an arrest is effectuated when the defendant has been actually restrained and placed under the officer's control. *Id.* at 50. The Court further noted this determination is "highly dependent on the particular facts and circumstances" of the case and "requires a fact-specific inquiry to determine at what point the arrest is complete." *Id.* at 49-50. Under this analysis, Ajak's arrest was completed once he was handcuffed in his kitchen with one or more officers standing over him. *Id.* at 50. A contrasting example of *Ajak* is *State v. Belton*, 108 S.W.3d 171, 176 (Mo. App. 2003), in which the defendant's arrest was not complete, despite the fact he was placed in handcuffs and told he was under arrest, because he was still sitting in his wife's vehicle and ultimately was able to drive away and, therefore, was not under the officer's control. *Id.* Here, although Hurst was handcuffed and placed in the back of a police vehicle, he was not yet under the officers' control, as evidenced by the fact he was able to climb into the front seat of the vehicle and drive away. As such, Hurst's arrest was not complete at that time, and there was sufficient evidence to convict him for resisting arrest based on his efforts to flee in the police vehicle.

[5] For more context about how the rarely used defense of necessity has been considered by courts in other states, see the well-written concurring opinion.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,          )
          )
    Respondent,       )
          )
v.                 )     No. SC99799
          )
JASON MICHAEL HURST,    )
          )
    Appellant.        )

## CONCURRING OPINION

I concur with the well-written and reasoned principal opinion. The circuit court did not err in refusing to submit Jason Hurst's necessity defense instruction as the principal opinion properly concludes. I write separately, however, to emphasize the unique nature of the defense of necessity and to underscore the narrow limits of its applicability. These noteworthy characteristics are laid bare in the distinctions between the defense of necessity and other more common justification defenses such as self-defense, and in the court's statutorily pronounced gatekeeping role in applying the necessity defense.

Although unique and rarely applied, "[t]he defense of necessity has its roots deep in the common law" as a type of justification defense. *State v. O'Brien*, 784 S.W.2d 187, 189 (Mo. App. 1989). It "is often expressed in terms of choice of evils: [w]hen the pressure of circumstances presents one with a choice of evils, the law prefers that [she] avoid the

greater evil by bringing about the lesser evil." *City of St. Louis v. Klocker*, 637 S.W.2d 174, 175 (Mo. App. 1982) (first alteration in original) (quoting LaFave and Scott, *Criminal Law*, § 50 at 382). "Thus, conduct which would otherwise be a crime is, under unusual and imminent circumstances, the lesser of two evils and no offense." *O'Brien*, 784 S.W.2d at 189.

In 1977, the defense was codified as part of this state's original criminal code. With no substantial changes since its codification, section 563.026[1] sets out the defense of necessity and circumscribes its applicability.[2] The statute provides:

> 1. Unless inconsistent with other provisions of this chapter defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute any offense other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.
> 2. The necessity and justifiability of conduct under subsection 1 of this section may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.
> 3. The defense of justification under this section is an affirmative defense.

§ 563.026. As the principal opinion notes, the statute establishes four elements that must be proven for otherwise criminal conduct to be justified: 1) the conduct is necessary as an

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.
[2] Chapter 563 of the Revised Statutes of Missouri codifies all the justification defenses recognized in Missouri.

2

emergency measure; 2) to avoid an imminent public or private injury; 3) which is about to occur through no fault of the defendant; and 4) the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged.[3] There are several court of appeals cases that set out differing elements and tests for establishing the defense of necessity.[4] The principal opinion properly ignored this caselaw, which appears to rely on the common law application of the

---

[3] The principal opinion states the fourth element requires a finding that the "[criminal conduct] is objectively reasonable in light of the injury to be avoided." Although the fourth element as set out in the statute involves an objective inquiry, establishing this element pursuant to section 563.026.1 requires the court and factfinder, as more thoroughly explained in this separate opinion, to determine "the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged."

[4] The court of appeals in *Klocker*, 637 S.W.2d at 175, citing *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078 (Alaska 1981), set out a three-part test for giving the necessity instruction: "(1) the act charged must have been done to prevent a significant [harm]; (2) there must have been no adequate alternative; (3) the harm caused must not have been disproportionate to the harm avoided." Several court of appeals cases have cited or utilized the *Klocker* test. *See, e.g.*, *State v. Karr*, 968 S.W.2d 712, 716 (Mo. App. 1998); *State v. Smith*, 884 S.W.2d 104, 105 (Mo. App. 1994); *O'Brien*, 784 S.W.2d at 189; *State v. Farris*, 778 S.W.2d 11, 12-13 (Mo. App. 1989); *State v. Vedder*, 668 S.W.2d 639, 640 (Mo. App. 1984). The court of appeals in *State v. Diener*, 706 S.W.2d 582, 585 (Mo. App. 1986), citing *Commonwealth v. Brugmann*, 433 N.E.2d 457, 461 (Mass. App. Ct. 1982), set out a slightly different four-part test for the instruction:
> "(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is no legal alternative which will be effective in abating the danger; and (4) the legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

Cases citing or utilizing the *Diener* test include *State v. Eyler*, No. ED110234, 2023 WL 1787107 (Mo. App. Feb. 7, 2023); *State v. Zuidema*, 552 S.W.3d 186, 190 (Mo. App. 2018); *State v. Cox*, 248 S.W.3d 1, 7 (Mo. App. 2008); *State v. Stewart*, 186 S.W.3d 832, 834 (Mo. App. 2006); *State v. Burkemper*, 882 S.W.2d 193, 199 (Mo. App. 1994); and *O'Brien*, 784 S.W.2d at 189-90;

defense, and this Court should simply apply and adhere to the language of the statute as the principal opinion cites and directs.

This Court, however, has never had the occasion to interpret the language of section 563.026 and apply the defense of necessity as set forth in this statute. In employing this defense, this Court and future courts should be cautious relying on our prior caselaw involving self-defense and other related justification defenses. There are fundamental differences in the nature of these respective defenses and, in particular, the statutory schemes of the necessity defense and self-defense. Section 563.026 establishes necessity as an affirmative defense. The burden, therefore, is on the defendant to inject the issue and prove the defense. Conversely, section 563.031.5 establishes self-defense as a special negative defense. Once injected into the case by the defendant, the burden shifts to the state to prove the defense inapplicable beyond a reasonable doubt. This distinction reflects the importance of self-defense in our criminal jurisprudence. In requiring the state to bear the burden of proof when self-defense is injected into a case, the legislature recognized the absence of self-defense as fundamental to establishing criminal liability.

By contrast, the availability of the defense of necessity has been "extremely limited." *Stewart*, 186 S.W.3d at 834. Traditionally, the defense was reserved for situations wherein the harm to be avoided was caused by physical forces of nature resulting in "absolute and uncontrollable necessity" for the defendant to commit a crime. *O'Brien*, 784 S.W.2d at 189. Even after the application of the defense was relaxed to encompass harms caused by mortal man, its use remained limited. *Id*. The language of section 563.026 reflects the traditionally narrow application of the defense by limiting the employment of

4

the defense to "emergency" situations.[5]  Section 563.026.1.  Given this fundamental distinction between the defense of necessity and self-defense, courts should be cautious relying on caselaw applying self-defense when deliberating whether to submit an instruction on the defense of necessity.

This case demonstrates at least one pitfall in applying self-defense concepts and caselaw to the defense of necessity.  In this case, Hurst testified he subjectively believed he had to commit the charged offenses to avoid death or injury to him and his wife.  To establish self-defense, a defendant "must have believed that such act was necessary, and he must have had reasonable grounds for such belief."  *State v. Singleton*, 77 S.W.2d 80, 83 (Mo. 1934).  This long-held understanding of self-defense has been codified in section 563.031. The application of self-defense pursuant to section 563.031.1 depends first and foremost on whether the defendant "reasonably believes" force is necessary to defend him or herself.[6]  The defense of necessity pursuant to section 563.026 requires no such analysis.

---

[5] While not binding on this Court, the Comment to the proposed enactment of section 563.026 illustrates the narrow limits of the defense.  The Comment provides:

> The [defense] is designed to cover unusual situations in which some compelling circumstances or "emergency" warrant deviation from the general rule that transgression of the criminal law will not be tolerated.  It would "justify", for example, blasting buildings to prevent the spread of a major conflagration; breaking into an unoccupied rural house for the purpose of making a telephone call vital to a person's life; or forcibly restraining a person infected with a virulent contagious disease in order to prevent him from going out and starting an epidemic.
>
> The phraseology of the section, tightened by the use of such terms as "emergency measure," is designed closely to limit its application and to preclude extension beyond the narrow scope intended.

[6] Although the defendant's subjective belief is relevant to the application of self-defense, the defendant's subjective belief must be objectively reasonable to employ the defense.

5

Section 563.026.1 justifies criminal activity when "it is necessary" - not when the defendant "believes" it is necessary.[7]

The evidence relevant to the application of section 563.026 is solely the objective facts and circumstances that suggest a necessity exists to justify the defendant's criminal conduct.[8] The circuit court therefore, must determine whether the objective facts and circumstances presented at trial, if true, are legally sufficient to establish the factual elements of the defense. The court must review the objective evidence and determine whether the defendant's actions were necessary as an emergency measure to avoid an imminent public or private injury that occurred by reason of a situation occasioned or developed through no fault of his own. Applying this objective standard ensures the application of the necessity defense is not employed haphazardly based on a defendant's subjective perception that a necessity exists and limits the use of the defense to the

---

*State v. Thomas*, 625 S.W.2d 115, 123 (Mo. 1981) (It is not the defendant's subjective belief" alone that "determines whether a self-defense instruction is required; rather, the facts must reveal … [the] defendant reasonably believed" the use of force was necessary).

[7] While a defendant's beliefs may not be relevant to the analysis of whether the defense of necessity is submitted by way of instruction to the jury, such evidence may indeed be admissible and relevant for other purposes. *See State v. Gates*, 635 S.W.3d 854, 860 n.5 (Mo. banc 2021).

[8] The relevant evidence includes the defendant's objective testimony suggesting a necessity existed. *Karr*, 968 S.W.2d at 716 (considering a defendant's testimony as true to see if any legal basis existed for the necessity instruction); *see also People v. Speer*, 255 P.3d 1115, 1119 (Colo. 2011) (holding the trial court is obliged to instruct the jury on the necessity defense "if there is any credible evidence, including even the highly improbable testimony of the defendant himself, supporting it"); *Arnwine v. State*, 20 S.W.3d 155, 158 (Tex. App. 2000) ("It does not matter whether such evidence is strong or weak, contradicted or uncontradicted, or what the trial court may think about its credibility.").

6

extraordinary circumstance in which an emergency situation may justify criminal behavior. *Stewart*, 186 S.W.3d at 834.

Moreover, unlike the self-defense statute, section 563.026 sets forth an important and unique gatekeeping role for the circuit court in applying the defense of necessity. As the principal opinion notes, section 563.026.2 provides: "Whenever evidence relating to the defense of justification under this section is offered, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification." No other justification defense, including self-defense, sets forth this gatekeeping requirement. This distinction reflects the unique nature of the necessity defense and the historical limitations under the common law on the application of this unusual defense. *See O'Brien*, 784 S.W.2d at 189.

The gatekeeping language in section 563.026.2 codifies a common law principle that the court must determine whether the harm or injury to be avoided outweighs the harm caused in committing the criminal offense. Section 563.026.1 provides the defense of necessity is available only when "the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense charged." When weighing and balancing the competing injuries as required by section 563.026.1, section 563.026.2 prohibits basing the determination "upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder." A value judgment, therefore, with limitations on the values to be considered and weighed, is required before applying the defense of necessity. This value judgment

7

necessary to establish the defense of necessity is a longstanding element of the defense at common law to ensure against the defense being used as an instrument for juror nullification of unpopular or controversial laws or otherwise being improperly utilized. *See, e.g.*, *Cox*, 248 S.W.3d at 6-8 (finding the defense of necessity was unavailable "as a matter of law" for a defendant charged with a marijuana offense who claimed he needed the narcotic for medical purposes). At common law, the court as gatekeeper was to make the value judgment determination necessary to establish the defense. *See, e.g.*, *id.* Many courts have held to this rule and noted its efficacy in preventing the defense's improper use.

In *Reeve v. State*, the Alaska court of appeals noted "[a]n objective determination must be made" regarding whether "the harm caused" was "disproportionate to the harm avoided" and pondered whether this question was for the court or the jury. 764 P.2d 324, 325 (Alaska Ct. App. 1988). In its discussion, the court cited *Nelson v. State*, 597 P.2d 977, 980 n.6 (Alaska 1979), which noted "[a]n objective determination" must be made regarding this "value judgment" and "[t]he majority of jurisdictions appear to hold that this determination must be made, at least initially, by the court." Following *Reeve*, the Alaska court of appeals suggested it is the court alone that determines whether the defendant's value judgment was correct. *Seibold v. State*, 959 P.2d 780, 782 (Alaska Ct. App. 1998). The Alaska court of appeals later went on to find "the proportionality of the harm done

compared to the harm avoided [] is a question of law to be decided by the judge." *Allen v. State*, 123 P.3d 1106, 1108 (Alaska Ct. App. 2005).[9]

Similarly, *State v. Tate* held "[t]he underlying value judgment (assuming the required elements do have factual underpinning) as to whether the individual's need outweighs society's interest in enforcing the criminal law must be made by the judge after hearing the proofs." 477 A.2d 462, 469 (N.J. Super. Ct. Law Div. 1984). The *Tate* court explained

> "justification by necessity is an expression of public policy. What that public policy means in an individual case is not left to the jurors but rather is decided by the public official presiding – the judge .… The judge is believed to be in a better position to determine what is public policy in each case."

*Id.* The court in *Tate* gave numerous examples from the common law in support of this conclusion. *Id.* at 465-66, 69. For example, it was the court in *State v. Burton*, 103 A. 962, 962-64 (R.I. 1918), determining as matter of law whether a military dispatch driver was justified in speeding to deliver an urgent message. Similarly, in *United States v. Ashton*, 24 F. Cas. 873, 874 (C.C.D. Mass. 1834), the court articulated the circumstances under which the defendants could be justified in committing mutiny. In *United States v. Holmes*, 26 F. Cas. 360, 368-69 (C.C.E.D. Pa. 1842), the court held the lower court did not err in stating as a matter of law that a ship's captain could not be justified identifying passengers to throw overboard in an effort to save others.

---

[9] The Supreme Court of Alaska in *State v. Garrison* acknowledged *Seibold*'s and *Allen*'s holding but did not reach this issue. 171 P.3d 91, 96-97 (Alaska 2007).

The gatekeeping language in section 563.026.2 serves to expressly codify the court's role and responsibility, as it was at common law, to make the value judgment required to establish the defense of necessity. Though no Missouri court has directly addressed the significance of the gatekeeping language in section 563.026.2, the courts of Missouri have served in a gatekeeping role by precluding the defense as a matter of public policy upon weighing the harms or injuries at issue. *See, e.g.*, *O'Brien*, 784 S.W.2d at 192-93 (finding the defense unavailable to a trespasser attempting to halt abortions at an abortion clinic upon weighing harms at issue and "general policy considerations"); *Cox*, 248 S.W.3d at 6-7 (finding the defense unavailable "as a matter of law" to a defendant claiming to possess marijuana for medical purposes upon determining the legislature had precluded medical necessity as a defense).

Moreover, courts in other jurisdictions interpreting similar gatekeeping language in their respective necessity statutes have found such language as reflecting the court's role in making the requisite value judgment. New York's necessity statute, N.Y. Penal Law § 35.05.2, is nearly identical to section 563.026.2 and includes the same gatekeeping language.[10] The court in *Tate* interpreted N.Y. Penal Law § 35.05.2 when applying the

_____

[10] N.Y. Penal Law § 35.05.2 (2022) provides for a necessity defense only if:
> Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and

defense of necessity in that case. 477 A.2d at 469. In holding the value judgment determination is to be made by the court, *Tate* rested not only on common law cases but on N.Y. Penal Law § 35.05.2, stating the New York statute "**specifically requires that procedure**." *Id.* (emphasis added).

Colorado's necessity statute also provides similar gatekeeping language, and Colorado courts have recognized the unique nature of the defense and the limitations to its applicability.[11] Like the Missouri and New York statutes, the gatekeeping language in Colorado's necessity statute is preceded by the value judgment element and the requirement that necessity not rest upon considerations pertaining only to morality and

advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense.

[11] Colo. Rev. Stat. § 18-1-702 (2022) provides:

(1) Unless inconsistent with other provisions of sections 18-1-703 to 18-1-707, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no conduct of the actor, and which is of sufficient gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

(2) The necessity and justifiability of conduct under subsection (1) of this section shall not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. When evidence relating to the defense of justification under this section is offered by the defendant, before it is submitted for the consideration of the jury, the court shall first rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification.

advisability of the criminal statute defining the offense charged. The Colorado court of appeals has noted, "in recognition of the broad scope of the defense's applicability and of its potential for misuse and abuse," Colorado's necessity statute provides "different and more exacting standards as prerequisites for presentation to a jury … than those required for other justification defenses." *People v. Brandyberry*, 812 P.2d 674, 677 (Colo. App. 1990). The court noted this follows from traditional limitations on the applicability of the defense at common law, where the "necessity defense is not available as an instrument of juror nullification of unpopular laws or for juror condonation of crimes committed against persons who espouse or adhere to unorthodox or unpopular ideas or causes that pose no threat of immediate injury." *Id.*

The gatekeeping language in section 563.026.2, therefore, thus provides an important role for the court in limiting the application of the defense of necessity. This gatekeeping role requires the court to determine as a matter of law whether the claimed facts and circumstances would, if established, constitute a justification when evidence relating to the defense of necessity is offered. Specifically, the court must determine whether the objective, as opposed to subjective, facts and circumstances presented at trial, if true, are legally sufficient to establish the defense. The court must review the objective evidence and determine whether the defendant's actions were necessary as an emergency measure to avoid an imminent public or private injury that occurred by reason of a situation occasioned or developed through no fault of the defendant. This gatekeeping role also involves making a value judgment as to whether the "desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute

12

defining the offense charged." In making this value judgment, the court must weigh the competing harms objectively, and its examination may not rest upon considerations pertaining only to the morality and advisability of the criminal statute defining the offense charged.[12]

In this case, the circuit court properly fulfilled its gatekeeping role when it refused Hurst's proffered necessity defense instruction. As the principal opinion succinctly holds, there was insufficient evidence to support a necessity defense instruction for either of the charges against Hurst. Hurst's subjective perception that he and his wife faced death or injury at the hands of law enforcement did not entitle Hurst to a necessity defense instruction. Moreover, even assuming the objective evidence, if true, established Hurst and his wife risked imminent harm or injury through no fault of Hurst and a necessity existed to avoid this injury, the court still could have found the potential risk of harm or injury was outweighed by the harm or injury sought to be prevented by the criminal offenses Hurst was accused of violating. As a matter of public policy, the objective facts

---

[12] While the court plays an important gatekeeping role, the jury remains the ultimate fact finder and determiner of whether the defense of necessity applies. If the court determines the claimed objective facts and circumstances, if true, are legally sufficient to submit and instruct on the defense, the jury must make a factual finding that a necessity actually existed through no fault of the defendant. *See Ashton*, 24 F. Cas. at 874-75 (holding the defendants were justified in committing mutiny if the jury made a factual finding a ship was not seaworthy to proceed); *Garrison*, 171 P.3d at 95 ("[T]he defendant will be entitled to an instruction on the defense if it is at least sufficient to permit a reasonable juror to find that each element of the defense has been satisfied."). The jury in such cases must also determine whether the harm or injury sought to be avoided outweighs the harm sought to be prevented by the statute defining the offense charged. *See People v. Kucavik,* 854 N.E.2d 255, 259-60 (Ill. App. Ct. 2006) (holding the trial court was required to give an instruction on the defense of necessity when sufficient evidence existed to support the defense).

13

and circumstances creating the alleged dangers Hurst and his wife faced in being arrested, if true, simply did not outweigh the dangers to Hurst and others resulting from stealing the patrol vehicle and engaging in the high-speed chase through city streets.  For these reasons, the circuit court did not err in refusing to give Hurst's proffered necessity instruction.  *C.f. Karr*, 968 S.W.2d at 715-16 (holding the circuit court did not err in refusing to give a necessity instruction when insufficient evidence existed to support the defense).  As the principal opinion properly reaches this conclusion, I concur.

_____

W. Brent Powell, Judge